**Jerilyn ZINN, Plaintiff,**

v.

**David McKUNE, et al., Defendants.**

**No. 95–2429–JWL.**

United States District Court,
D. Kansas.

Dec. 6, 1996.

Bert S. Braud, Jane McQueeny, The Popham Law Firm, Kansas City, MO, for plaintiff Jerilyn Zinn.

John D. Tongier, Holbrook, Heaven & Fay, P.A., Merriam, KS, for defendant Prison Health Services, Inc.

Linden G. Appel, Kansas Department of Corrections, Topeka, KS, for defendants David McKune and State of Kansas Department of Corrections, Lansing Facility, Fritz Young.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction.

This employment discrimination case comes before the court on the defendants' motion (Doc. #52) to dismiss pursuant to Fed.R.Civ.Pro. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed. R.Civ.Pro. 56. The plaintiff asserts (1) that she was retaliated against for engaging in activity protected under Title VII, (2) that she was retaliated against after "blowing the whistle" on what she perceived as improper use of state property, and (3) that her Fourteenth Amendment Equal Protection and Due Process rights were violated. The defendants argue, among other things, that the plaintiff's retaliation claims fail because they are not her employer and that the plaintiff's § 1983 claim fails because she was not deprived of any clearly established federal rights. For the reasons discussed below, the

court grants the defendants' motion for summary judgment.

## II. Facts.

The following facts are either uncontroverted or, if controverted, construed for the purposes of resolving this motion in the light most favorable to the plaintiff. On June 22, 1994, the Kansas Department of Corrections (KDC), a state agency, entered into a contract (Contract) with Prison Health Services, Inc. (PHS), a private corporation, which stated that PHS agreed to provide medical services for incarcerated individuals in the custody of the Kansas Secretary of Corrections. The Contract provided that if the KDC was dissatisfied with any PHS employee provided under the Contract, KDC could seek the person's removal if the problem causing KDC's dissatisfaction could not be resolved. *Plaintiff's response,* Exhibit D Art. IV ¶ B. Pursuant to the Contract, the plaintiff, a female nurse employed by PHS, was assigned to run the medical clinic at the Osawatomie Correctional Facility (OCF).

By virtue of the sensitive nature of penal institutions, KDC employees played a significant role concerning certain aspects of the plaintiff's employment. KDC employees patrolled, searched, audited, and coordinated access to the medical clinic in order to maintain security and safety. Ms. Phyllis Warder, a KDC employee supervised by PHS employees, oversaw the plaintiff's overall work performance and evaluations. The working relationship between the plaintiff and OCF staff members became strained as a result of certain contentious issues arising from the plaintiff scheduling a medical trip for inmates, a security breach of the medical clinic's refrigerator, safety checks of first aid kits, the protocol for medical examinations of inmates, inmates purportedly remaining in the medical clinic without a need for medical attention, and two incidents in which the plaintiff and a male inmate were observed in the medical clinic with the door locked and the blinds closed.

On November 30, 1994, Ms. Marilyn Belshe, the acting Unit Administrator for OCF, wrote a memorandum to Mr. Fritz Young, a Unit Administrator at OCF, concerning certain inmates improperly spending time at the medical clinic. On December 20, 1994, the plaintiff filed a KDOC EEO Discrimination Complaint against Ms. Belshe, Mr. Dennis Blanton, and Mr. Rick Courtney alleging the following,

> Numerous complaints, written reports and co-worker gossip have resulted in an embarrassing waste of managerial time as well as a waste of professional care giving time. Complaints by those listed have further resulted in my being required to meet with my superiors on many occasions over the past eight months. All complaints have been invalid and without merit. The complaints have ranged from inappropriate placing of medical sharps to having sexual encounters with inmates in the clinic setting. These complaints are nothing more than a vindictive attempt to degrade my personal life, belittle my professional accomplishments and to impair me in my professional career.[1]

*Defendant's memorandum in support,* Exhibit 11. During an internal investigation of this complaint conducted by Captain David Castello, the plaintiff provided information concerning her belief that state property was being misused by KDC employees. Specifically, the plaintiff asserted that inmates were using state property to make gifts for KDC employees.

After he completed his internal investigation, Captain Castello concluded that the allegations contained in the plaintiff's complaint were meritless. On January 19, 1995, Mr. Young sent a memorandum to his immediate supervisor, Mr. Rudolph Stupar, asserting that the plaintiff had ignored a January 4 directive concerning when inmates may be present in the medical clinic [2] and seeking his

---

1. This complaint does not allege that the plaintiff's alleged treatment was in any way motivated by her gender, race, color, age, religion, national origin, or disability.

2. The directive stated, "Inmates are allowed in the clinic only for clinic business, such as treatment, medical assessment, clinic maintenance, Etc." *Defendant's memorandum in support,* Exhibit 22.

guidance on the matter. On February 1, 1995, Mr. Stupar sent a memorandum to PHS (Mr. Mark Boyd) requesting the plaintiff's immediate transfer based on the fact that she had "compromised security." *Defendant's memorandum in support*, Exhibit 24. As a result of OCF's request that the plaintiff be reassigned, PHS offered the plaintiff positions at the Wyandotte County Jail or the Lansing Correctional Facility Central Unit Clinic. The plaintiff made inquiries concerning both positions. However, the plaintiff would not accept the position at Lansing, which is over 100 miles from her home, because her medication for Behcet's Disease prevented her from driving over 30 minutes at a time. Similarly, the plaintiff would not accept the position at Wyandotte County Jail, which required her to go up and down stairs, because her doctor's directions concerning her recent diagnosis of Behcet's Disease severely curtailed how much she was permitted to walk, especially up and down stairs. On February 21, 1995, Mr. Young sent a memorandum to the OCF staff informing them that the plaintiff had been reassigned and that the plaintiff would no longer be allowed entry into the facility. *Defendant's memorandum in support*, Exhibit 25. That same day, PHS terminated the plaintiff because she declined both of her re-assignment options and refused to resign.

On April 3, 1995, the plaintiff filed a complaint against PHS with the EEOC and KHRC. The complaint stated, in pertinent part,

> I worked for the above-named employer [PHS] for three years and my last job title was charge nurse. I was subjected to retaliation by this employer because of a complaint against a Correctional Officer who was harassing me because of my sex, female. I made a formal complaint about this harassment on December 20, 1994. I was discharged on February 21, 1995.
>
> I believe I have been discriminated against based on my sex, female, ..., and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended....

*Defendant's memorandum in support*, Exhibit 29. This complaint does not assert that any of the defendants in this matter participated in PHS' decision to terminate the plaintiff or that they participated in a pattern or practice of discrimination against the plaintiff.

On September 27, 1995, the plaintiff filed this lawsuit against PHS, Mr. David McKune[3], the KDC, and Mr. Young. On September 3, 1996, the plaintiff informed the court that she had settled her claims against PHS and requested that the court dismiss PHS, with prejudice, from her lawsuit. That same day, the court granted the plaintiff's request for dismissal, with prejudice, of her claims against PHS (Doc. # 51).

### III. Summary judgment standard. [4]

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.Pro. 56(c); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-movant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be re-

---

**3.** Mr. McKune is the warden at the OCF.

**4.** Because both parties rely on evidence outside the pleadings, the court will consider the defen-

dants' motion under the standard for summary judgment. Fed.R.Civ.Pro. 12(b).

solved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

## IV. Discussion.

### A. Jurisdictional issues.

■ The defendants contend that the plaintiff's Title VII retaliation claim is barred because the plaintiff failed to exhaust her administrative remedies. In support of their argument, the defendants point to the fact that the plaintiff's EEOC complaint, dated April 3, 1995, does not assert that any of the defendants retaliated against her and thus, the plaintiff has not filed the requisite EEOC charge against them. The plaintiff responds that the defendants waived this argument by failing to include it in the Pretrial Order (Doc. # 47). The defendants reply that failure to exhaust Title VII administrative remedies is an issue of subject matter jurisdiction, which cannot be waived. They are incorrect. In *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), *reh'g denied,* 456 U.S. 940, 102 S.Ct. 2001, 72 L.Ed.2d 461 (1982), the Supreme Court held that "... a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* at 393, 102 S.Ct. at 1132; *Richardson v. Frank,* 975 F.2d 1433, 1435 (10th Cir.1991) (citations omitted). Thus, the issue is whether the defendants waived their argument by not including it in the Pretrial Order. Because the Pretrial Order supersedes the pleadings and controls the subsequent course of litigation, the court concludes that by not including its exhaustion of administrative remedies argument in the Pretrial Order, the defendants waived such an argument and are therefore barred from making it in their summary judgment motion. *Franklin v. U.S.,* 992 F.2d 1492, 1497 (10th Cir.1993) (citing *Hullman v. Board of Trustees of Pratt Community College,* 950 F.2d 665, 667 (10th Cir.1991)).

■ The defendants also appear to argue that the plaintiff's claims are barred as to the KDC because the KDC is an entity which cannot be sued. In response, the plaintiff argues (1) that the defendants did not raise this argument in the Pretrial Order and, therefore, waived it and (2) that had the defendants timely raised this argument, the plaintiff would have substituted the State of Kansas (State) for the KDC. Because the defendants did not pursue this issue in a timely fashion and because the KDC can now be replaced by the State without that defendant suffering legal prejudice, the court concludes that the KDC's capacity to be sued argument is without merit.

### B. Title VII employer status.

■ In *Lambertsen v. Utah Dep't of Corrections,* 79 F.3d 1024 (10th Cir.1996), the Tenth Circuit addressed the issue of whether a teaching assistant, who was employed by the local public school district and assigned to teach inmates at the Utah State Correctional Facility on the facility's premises, was an employee of the Utah Department of Corrections (UDC) for Title VII purposes. *Id.* at 1026. The *Lambertsen* court affirmed the district court's utilization of the so-called "hybrid" test to determine whether the plaintiff was a UDC employee for Title VII purposes. *Id.* Under the hybrid test, a combination of common law and economic concepts, "... the main focus of the court's inquiry is the employer's right to control the 'means and manner' of the worker's performance." *Id.* at 1028 (citing *Oestman v. Nat'l Farmers Union Ins. Co.,* 958 F.2d 303, 305 (10th Cir.1992)). However, the hybrid test also looks at various non-exclusive factors enumerated in *Lambertsen* as follows: (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision, (2) the skill required in the particular occupation, (3) whether the employer or the employee furnishes the equipment used and the place of work, (4) the length of time the individual has worked, (5) the method of payment, whether by time or by job, (6) the manner in which the work relationship is terminated,

(7) whether annual leave is afforded, (8) whether the work is an integral part of the business of the employer, (9) whether the worker accumulates retirement benefits, (10) whether the employer pays social security taxes, and (11) the intention of the parties. *Id.* In concluding, based on the totality of the circumstances, that the plaintiff was not an employee of the UDC for Title VII purposes, the *Lambertsen* court stated,

> Although the Department physically controlled plaintiff's entry into the Correctional Facility and provided security for plaintiff and other employees of the Academy, the uncontroverted evidence indicates that plaintiff's employer was the School District. Most notably, there is simply no evidence in the record from which a finder of fact could conclude the Department controlled the means or the manner in which plaintiff performed her day-to-day work. Rather, the uncontroverted evidence makes clear that the major terms of plaintiff's employment (e.g., work assignments, pay, etc.) were controlled solely by the School District.

*Id.* at 1028–29.

 Construing the facts in a light most favorable to the plaintiff, the court concludes that under the hybrid test, there is no evidence from which a trier of fact could conclude that the plaintiff was an employee of the KDC for Title VII purposes. The plaintiff attempts to persuade the court that the KDC controls the 'means and manner' of her performance based on arguments concerning the first, third, fifth, sixth, and eighth factors of the hybrid test. Specifically, the plaintiff asserts that the *Lambertsen* decision is distinguishable from the facts of this case for six reasons: (1) KDC employees supervised and evaluated the plaintiff, (2) the KDC provided the location and the equipment, (3) KDC employees kept track of the plaintiff's time and documented when she was late or away from the facility, (4) conduct of KDC representatives led to the plaintiff's termination, (5) no other PHS employee was present at the OCF, and (6) the plaintiff was required to follow the KDC's policies and procedures.

The court finds the plaintiff's arguments unpersuasive. The record does reflect that the plaintiff's direct supervisor, Ms. Warder, was an employee of the KDC. However, the uncontroverted evidence indicates that Ms. Warder oversaw the plaintiff's overall work performance, but did not control the means or the manner in which plaintiff performed her day-to-day work. In fact, Ms. Warder was not even physically located at the OCF facility and sometimes had as little contact with plaintiff as one telephone call per week according to Ms. Warder's uncontradicted deposition testimony. In addition, Ms. Warder actually answered to a PHS employee as her supervisor, delinking her from the KDC and making the tie to PHS even more clear. Furthermore, there is no evidence that the location of the medical clinic, the type of equipment provided, or KDC's policies and procedures controlled the means and manner of the plaintiff's nursing duties. Rather, the uncontroverted evidence demonstrates that it was for security reasons, and not healthcare reasons, that the KDC required the plaintiff to follow its policies and procedures and provided the equipment and location for her work. Thus, the KDC's policies and procedures were incidental to the means and manner of her performing her nursing duties and were not designed to control them.

The plaintiff does not indicate why she contends the fact that KDC employees kept track of the plaintiff's time and documented when she was late or away from the facility or the fact that no other PHS employee was present at the OCF are relevant under the hybrid test. Those facts do not seem to fit under any of the eleven articulated factors. Nor do they tie in to other evidence, such as the KDC exercising ultimate disciplinary or work evaluation authority over the plaintiff, which evidence is lacking here. As a result, the court will not speculate on the inference plaintiff wishes it to draw and, accordingly, the court does not believe a finder of fact could give that evidence any weight under the hybrid test. Finally, and perhaps most tellingly, the plaintiff has produced no evidence linking the KDC with her termination. The KDC requested her re-assignment, but there is no evidence in the record to suggest

that the KDC knew or even had reason to know that such a request would lead to her leaving her job. Thus, the court is not persuaded by any of the plaintiff's arguments attempting to distinguish the *Lambertsen* decision.

The court believes, furthermore, that the uncontroverted evidence relevant to the *Lambertsen* factors cuts against the plaintiff's argument that she is a KDC employee for Title VII purposes. Specifically, the following facts weigh strongly against the plaintiff's position: the plaintiff's profession, nursing, requires a high level of skill, unlike a clerical or laborer job; PHS controlled all of the plaintiff's wages and benefits; PHS, not the KDC, terminated the plaintiff after she refused to transfer positions; and, unlike a correctional officer, the plaintiff's services are no more integral to the "business" of the KDC than the teacher's services in *Lambertsen* (albeit both are important, even necessary services). Moreover, the plaintiff's contention that the KDC treated her like its employee is not supported by the record. The plaintiff argues that the number of reports generated by OCF correction officers concerning her establishes that she is a KDC employee for Title VII purposes.[5] The reports to which the plaintiff refers concern the following issues: when the inmates clean the clinic, when the first aid kits are inventoried, requesting prior notice of a change in the plaintiff's work schedule, the plaintiff's refusal to do an incident report as required by

KDC procedures, and a recommendation by Mr. Young to Mr. Boyd, a PHS employee, that the plaintiff be disciplined for leaving early. *Plaintiff's response,* Exhibits J–M, O, P. These reports concern security and attendance issues, not the means and manner of the plaintiff's work performance. In fact, the report concerning the discipline recommendation indicates that Mr. Young believed that only Mr. Boyd, a PHS employee, had the power to discipline the plaintiff. Thus, the court concludes that based on the totality of the circumstances, the plaintiff is not a KDC employee for purposes of Title VII. *Lambertsen,* 79 F.3d at 1028–29. As a result, the court concludes that summary judgment is appropriate on the plaintiff's Title VII retaliation claim. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

### C. Whistle-blower retaliation.

#### 1. Standard.[6]

■ Kansas courts have recognized several public policy exceptions to the employment-at-will doctrine, which allow either employer or employee to terminate the employment relationship for any or for no reason, at any time. *Moyer v. Allen Freight Lines, Inc.,* 20 Kan.App.2d 203, 205, 885 P.2d 391 (1995). One of those exceptions recognized by the Kansas Supreme Court is the so-called whistle-blower's exception. *Id.* In *Palmer v. Brown,* 242 Kan. 893, 752

---

5. The plaintiff also cites IMPP sections 01–113 and 02–118 in support of her argument that the KDC treated her like an employee. IMPP 01–113, which is cited by Mr. Young in a memo, defines an "employee" as, "Any person employed by an entity under contract to provide services to the Kansas Department of Corrections." *Plaintiff's response,* Exhibit O. The context of Mr. Young's memo concerned whether the plaintiff had an obligation, as the first individual to become aware of an incident, to file an incident report. *Id.* The plaintiff does not provide any basis from which a factfinder could conclude that IMPP 01–113's broad definition of employee pertains to anything beyond who is required to fill out an incident report. Moreover, by denying she was obligated to fill out this incident report, it appears that the plaintiff believes that she does not fit under this definition.

IMPP 02–118 defines an "employee" as, "Any person employed full time, or intermittent ap-

pointment to the Kansas Department of Corrections, including any person employed by an entity under contract to provide services to the Kansas Department of Corrections." *Plaintiff's response,* Plaintiff's Fact # 16; *Defendant's motion,* Exhibit 10. The plaintiff does not argue that this definition is applicable to her or that, unlike IMPP 01–113, the context of this section demonstrates that the plaintiff is a KDC employee for Title VII purposes. Moreover, upon examining the IMPP 02–118 in its entirety, it does not address, in any way, the means and manner in which the plaintiff, or any other individual, performs their work responsibilities. *Id.* Thus, the court concludes that there is no basis upon which a factfinder could conclude that either of these sections evidences an intent that the plaintiff be considered a KDC employee.

6. The parties are in agreement that Kansas law controls the plaintiff's supplemental state common law claim of whistle-blower retaliation.

P.2d 685 (1988), the Kansas Supreme Court stated:

> Public policy requires that citizens in a democracy be protected from reprisals for performing their civil duty of reporting infractions of rules, regulations, or the law pertaining to public health, safety, and the general welfare. Thus, we have no hesitation in holding termination of an employee in retaliation for the good faith reporting of a serious infraction of such rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials (whistleblowing) is an actionable tort.

*Id.* at 900, 752 P.2d 685. In order to establish a prima facie case of retaliation based on whistle blowing, an employee must show (1) that a reasonably prudent person would have concluded that the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare, (2) that the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee, and (3) that the employee was discharged in retaliation for making the report. *Id.* However, the whistle blowing must have been done out of a good faith concern over the wrongful activity reported rather than from a corrupt motive such as malice, spite, jealousy or personal gain. *Id.*

■ The standard of proof for a retaliatory discharge claim under Kansas law is proof by a preponderance of the evidence that is clear and convincing in nature. *Ortega v. IBP, Inc.,* 255 Kan. 513, 527, 874 P.2d 1188 (1994). Evidence is clear if it is certain, unambiguous, and plain to the understanding. *Id.* at 528, 874 P.2d 1188. Evidence is convincing if it is reasonable and persuasive enough to cause the trier of fact to believe it. *Id.* Under Kansas law, clear and convincing evidence is not a quantum of proof, but rather a quality of proof. *Id.*

### 2. *Analysis.*

The defendants argue that the plaintiff cannot state a prima facie case of whistleblower retaliation because (1) the internal policy that provided the basis for the plaintiff's whistle-blowing, KDC's Internal Management Policy and Procedure (IMPP) 02–118, is not a rule, regulation, or law and does not pertain to public health, public safety, or the general welfare; (2) the defendants are not the plaintiff's employer; (3) the defendants did not participate in the plaintiff's discharge; (4) the plaintiff was not discharged by PHS, she abandoned her position by not taking either opportunity offered her; (5) the plaintiff allegedly blew the whistle on an unrelated individual, not a co-worker or her employer; and (6) there is no causal connection between her alleged whistle-blowing and the defendants' conduct. The plaintiff responds (1) that she was jointly employed by PHS and KDC and (2) that the timing of her whistle-blowing (1/25/96—plaintiff's memorandum alleging misuse of state property) and the defendants' adverse conduct (2/1/96—plaintiff's reassignment requested) demonstrates a causal connection.

■ Construing the facts in a light most favorable to the plaintiff, the court concludes that the plaintiff has not stated a prima facie case of whistle-blower retaliation. Assuming for purposes of this motion that the IMPP 02–118 is a sufficient basis for a whistleblower claim, that Mr. Young is the plaintiff's co-worker, and that the plaintiff was terminated, the plaintiff's prima facie case fails for two reasons. First, the plaintiff has not cited any case law indicating that the Kansas Supreme Court would extend the tort of whistle-blower retaliation beyond the plaintiff's employer. The plaintiff relies solely on *Lambertsen v. Utah Dep't of Corrections,* 79 F.3d 1024 (10th Cir.1996), for her argument that the defendants should be considered her employer for whistle-blowing purposes. The court believes that the *Lambertsen* decision, which involved determining whether a plaintiff had established an employee-employer relationship for Title VII purposes, is inapplicable to the issue of whether the plaintiff is an employee of the defendants for whistleblower retaliation purposes based on the fact that Title VII is designed to prophylactically stop workplace invidious discrimination, *Hirase-Doi v. U.S. West Communications, Inc.,* 61 F.3d 777, 784 (10th Cir.1995) (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405,

417–18, 95 S.Ct. 2362, 2371–72, 45 L.Ed.2d 280 (1975)), while whistle-blower retaliation, which is an exception to the Kansas employment-at-will doctrine, focuses on the wrongful conduct of the entity with the power to terminate the employee. *Palmer*, 242 Kan. at 900, 752 P.2d 685. Thus, because there is no evidence that any of the defendants had the power to hire or fire the plaintiff, the court concludes that, based on the facts alleged, the Kansas Supreme Court would not extend the tort of whistle-blower retaliation to the defendants. *See id.* Moreover, even if the court believed that the Kansas Supreme Court would extend whistle-blower liability under *Lambertsen*, the court has already concluded that under the *Lambertsen* test, the plaintiff is not a KDC employee for purposes of Title VII.

■ Second, the plaintiff has not produced clear and convincing evidence demonstrating a causal connection between her whistle-blowing and her termination. The uncontroverted evidence indicates that subsequent to the plaintiff's whistle-blowing, the defendants sought her re-assignment and that the plaintiff's employer, PHS, offered the plaintiff two similar positions, which she chose not to accept.[7] The plaintiff has produced no direct or circumstantial evidence linking the defendants' request for her re-assignment with her termination. *Palmer*, 242 Kan. at 900, 752 P.2d 685. Thus, the court concludes that summary judgment is appropriate because the defendants are not the plaintiff's employer and because there is an absence of evidence to support the plaintiff's whistle-blower retaliation case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54.

### D. Section 1983.[8]

In order to state a cause of action under § 1983, the plaintiff must allege both the deprivation of a federal right and that the alleged action was taken under color of state law. *Buckley Const., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 857 (10th Cir.1991) (citing *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan.*, 927 F.2d 1111, 1115 (10th Cir.1991)). The parties do not dispute that the defendants (Mr. McKune and Mr. Young in their individual capacities) acted under color of state law. Therefore, the court need only address whether the defendants deprived the plaintiff of any federal rights.

■ The plaintiff appears to argue that she was deprived of her Fourteenth Amendment Equal Protection right to be free from discrimination and retaliation.[9] The only

---

7. The plaintiff alleges that she could not take these positions due to her recent diagnosis of Behcet's disease. However, the plaintiff does not produce any evidence indicating that the defendants knew about her illness or any work limitation it might create for her prior to their allegedly retaliatory conduct or that the defendants conduct resulted in her constructive discharge. Moreover, although not raised by the defendant, the court notes that the plaintiff does not indicate why her recent diagnosis of Behcet's disease would not have inhibited her from accomplishing her similar duties at OCF.

8. Section 1983 provides in pertinent part,

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

9. The defendants argue that they did not violate the plaintiff's Fourteenth Amendment Due Process rights by failing to provide the plaintiff with a pre-termination hearing. The plaintiff does not substantively contest this argument and thus, the court concludes that she has waived that basis of her § 1983 claim. Fed.R.Civ.Pro. 56(e).

 The defendants also argue that the plaintiff waived her Fourteenth Amendment Equal Protection claim by not controverting Defendants' Fact # 29, which states, "Plaintiff appears to have waived the equal protection claims raised in her complaint." Although the court recognizes that the plaintiff's failure to controvert this fact is a puzzling oversight if she did not intend to abandon that claim, the court rejects the defendants' argument. The court does not believe that assertion of a waiver of a claim is necessarily an appropriate subject matter for the parties' uncontroverted facts section. D.Kan. Rule 7.6(a)(2). Moreover, the plaintiff makes an attempt, although somewhat feeble, to support her § 1983 claim in her response, which leads the court to conclude that the plaintiff's failure to controvert "Fact" # 29 was inadvertent. In any event, in its analysis below, the court concludes that the plaintiff's § 1983 claim is substantively without merit.

"discrimination and retaliation" the plaintiff articulates in her complaint which could potentially be the basis of a claim for the deprivation of a federally protected right are the facts which underlie her Title VII retaliation claim. The plaintiff does not, for example, contend that Mr. McKune or Mr. Young discriminated against her because of her gender. The Tenth Circuit has not addressed this point previously. However, no court has recognized a claim under the Fourteenth Amendment's Equal Protection Clause based on a claim of retaliation for pursuing protected activity. *Bernheim v. Litt,* 79 F.3d 318, 323 (2nd Cir.1996) (citations omitted). Moreover, even if the court were to recognize such a claim, the defendants would be entitled to qualified immunity because no clearly established right exists under the Fourteenth Amendment's Equal Protection Clause to be free from retaliation. *Ratliff v. DeKalb County,* 62 F.3d 338, 340 (11th Cir.1995) (en banc); *Bruning v. Pixler,* 949 F.2d 352, 356 (10th Cir.1991) ("When a government official raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must produce facts 'sufficient to show both that the defendant's alleged conduct violated the law and that law was clearly established when the alleged violation occurred.'") (citations omitted), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Thus, the court concludes that summary judgment is appropriate because the plaintiff has not born her burden to show that the defendants deprived her of a clearly established federal right. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554.

**IT IS THEREFORE ORDERED BY THE COURT** that the State of Kansas be substituted for the Kansas Department of Corrections as a defendant in this matter.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Doc. # 52) is granted and that the plaintiff's complaint is dismissed in its entirety and as to all defendants.

**IT IS SO ORDERED.**