**Beth Pfeiffer NIXON, Plaintiff,**

v.

**NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**No. Civ.A. 98–2167–GTV.**

United States District Court, D. Kansas.

July 15, 1999.

Ruth M. Benien, Benien Law Offices, Chtd., Kansas City, KS, for Beth Pfeiffer Nixon, plaintiff.

Barry E. Warren, Chris R. Pace, Glenn S. Grayson, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for Northwestern Mutual Life Insurance Company, defendant.

## MEMORANDUM AND ORDER

VanBEBBER, Chief Judge.

Plaintiff Beth Pfeiffer Nixon brings this action against Northwestern Mutual Life Insurance Company, asserting a claim of pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*,[1] and the Kansas Act Against Discrimination (KAAD), K.S.A. 44–1001 *et seq.*, and a claim for breach of implied contract of employment. The case is before the court on defendant's motion (Doc. 11) for summary judgment. Defendant asserts that it was not plaintiff's employer. For the reasons set forth below, the motion is granted.

### I. Summary Judgment Standards

Summary judgment is appropriate if the evidence presented by the parties demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could resolve the issue either way. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue is "material" if it is essential to the proper disposition of the claim. *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). The court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion. *Id.*

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party will not bear the burden of persuasion at trial, that party "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671 (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific evidence that creates a genuine issue of material fact left for trial. *Id.*

### II. Factual Background

The following facts are either uncontroverted or are based on evidence submitted

---

1. Specifically, plaintiff asserts a claim under the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k).

in summary judgment papers viewed in a light most favorable to the plaintiff. Immaterial facts and facts not properly supported by the record are omitted.

Defendant is an insurance company that maintains its home offices in Milwaukee, Wisconsin. Defendant operates its insurance business through a network of insurance agents, and its sales are solicited entirely by the agents outside of the home office. Defendant contracts with General Agents in various parts of the United States. The General Agents in turn may contract directly with sales agents, known as Special Agents.

The General Agents' and Special Agents' contracts expressly provide that they are independent contractors, and not employees of defendant or, in the case of Special Agents, not employees of the General Agent or defendant. All of the contracts prohibit the General Agents and Special Agents from selling any life insurance or disability coverage other than defendant's products. The contracts do not control who the agents solicit, but they do control the territory where agents can sell and require them to maintain an office. Under the contracts, the agents must indemnify defendant for all expenses, costs, causes of action, and damages caused by the agent's actions or the agent's employees' actions. Defendant also requires that the agents keep certain records, which remain the property of the company.

This case arose from the employment of plaintiff by James Coopersmith, a Special Agent for defendant. Coopersmith entered a contract with Gary Hames, a General Agent. Coopersmith's contract expressly provided that he was an independent contractor. Coopersmith's business letterhead contained defendant's logo and masthead, and the names of Coopersmith and Hames. Plaintiff testified in her deposition that Coopersmith sold only defendant's insurance products, drove a business car with defendant's name on it, kept awards from defendant in his office, and attended defendant's seminars, meetings, and annual picnics. Coopersmith's

office was in the Northwestern Mutual Life office building in Shawnee Mission, Kansas. Approximately fifty to one-hundred people worked alongside Coopersmith and plaintiff in the building, and everyone shared the same break room and kitchen.

Defendant submitted the affidavit of Phillip B. Franczyk, defendant's Vice President of Agency Development. Franczyk began his career with defendant as a full-time agent in 1971. He works out of the home office in Wisconsin, but spent most of his career in the field, including several years as a General Agent. Franczyk stated in his affidavit that based upon his experience, he is familiar with defendant's agency structure and its relationship to the home office.

Franczyk stated in his affidavit that defendant had no involvement in the day-to-day operations of Coopersmith's business. He stated that defendant did not control Coopersmith's daily activities, work hours, or work schedule. Further, he stated that Coopersmith was free to make his own decisions regarding whom to solicit, and the time, place, and manner of solicitations with regard to defendant's insurance policies.

Franczyk also stated that Coopersmith was compensated strictly through sales commissions with no base salary, as stated in his Special Agent contract. Moreover, the commissions were paid through the General Agent. Neither defendant nor the General Agent withheld income taxes from the commission checks. Defendant included Coopersmith in its group insurance and retirement plans, and withheld social security taxes from the commission checks, but these acts were taken pursuant to special provisions of the Internal Revenue Code that specifically include independent life insurance agents as statutory employees for limited purposes. *See* 26 U.S.C. §§ 3321(d)(3)(B), 7701(a)(20). Neither defendant nor the General Agent paid workers' compensation or unemployment insurance for Coopersmith. Franczyk also

stated that Coopersmith was responsible for selecting, renting, and furnishing his own office space at his own expense.

Plaintiff was employed as a marketing assistant for Coopersmith from March 5, 1997 to May 9, 1997. Plaintiff testified that Coopersmith "asked me to come over to Northwestern Mutual to fill out an application and discuss some things." She also testified that "Jim Coopersmith approached me and he said that he worked for Northwest Mutual Life and that he wanted me to come be a member of his team." Coopersmith did not consult or notify defendant prior to hiring plaintiff. Plaintiff, however, testified that prior to being hired, she was interviewed for a personality profile by Colleen Eikmeier, the personnel director for defendant. She also testified that another female employee of defendant gave plaintiff her orientation, telling her about the employment policies, the dress code, the hours, and the vacation pay. Plaintiff testified in her deposition that she received a policy manual with the defendant's name and logo on the front. Defendant submitted a copy of the policy manual it alleges that plaintiff received. The manual has the name James M. Coopersmith on the front cover with the address of the building and suite number. The first line of the foreword states "Welcome to the offices of Jim Coopersmith." Plaintiff denies in her deposition that such language was in the manual that she received or that Coopersmith's name appeared on the front cover. The substantive portions of the manual, which plaintiff does not dispute that she received, identify the primary job responsibility of the general agency as servicing the needs of defendant's policy holders, and repeatedly references defendant's name and the address of the office building.

Plaintiff received all of her compensation by checks drawn on Coopersmith's personal account and signed by Coopersmith. Defendant did not compensate plaintiff. Coopersmith withheld all applicable taxes from plaintiff's checks. Coopersmith stated in his affidavit that he alone was responsible for establishing plaintiff's duties or work hours, and defendant had no control over those matters.

Plaintiff testified in her deposition that all of the allegedly offensive conduct was done by Coopersmith at the office in the Northwestern building. She further testified that no one other than Coopersmith was involved in her termination. Plaintiff had no contact with defendant regarding her termination, and never contacted defendant regarding her allegations of harassment and discrimination. Coopersmith's secretary handed plaintiff the termination letter and her severance check. Plaintiff testified in her deposition that defendant discriminated against her by failing to offer her a transfer, failing to provide a grievance procedure or review mechanism for her termination as referenced in the manual, and failing to discipline Coopersmith for his harassment and discriminatory conduct.

Plaintiff testified in her deposition that she believed Gary Hames, the General Agent, was the boss over everyone else in the Northwestern Mutual building, that he had the authority to discharge her, and that Coopersmith's secretary was an employee of Northwestern who reported directly to Coopersmith. Plaintiff, however, acknowledged in her deposition that she had no knowledge of Hames discharging any of Coopersmith's employees or any other employees in the building. She also testified that other people working in the building performed work for Coopersmith, even though they did not report directly to Coopersmith. Plaintiff believed that all of the clerical persons in the building were defendant's employees. Plaintiff also testified in her deposition that defendant set the policies with respect to work hours, vacation time, and insurance policies. She testified that everyone in the building kept the same hours.

### III. Analysis

Plaintiff asserts claims of pregnancy discrimination and breach of implied contract of employment. Defendant argues that there is no employment relationship be-

tween plaintiff and defendant, and therefore, both of plaintiff's claims against defendant should be dismissed. The court agrees.

■ To establish a claim under Title VII,[2] plaintiff must prove that defendant was her employer. *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir.1998). The Tenth Circuit has identified three tests for determining whether an employer-employee relationship exists: (1) the common law agency approach; (2) the "hybrid" method; and (3) the single employer test. *Id.*

■ There is little distinction between the common law agency approach and the hybrid method—both focus on the ability of the alleged employer "to control the means and manner by which the work is accomplished, but allow consideration of other factors as well." *Lambertsen v. Utah Dep't of Corrections*, 79 F.3d 1024, 1028 (10th Cir.1996). The other factors include: (1) the occupation at issue and whether the work is generally done under supervision; (2) the skill required for the occupation; (3) whether the alleged employer provides the equipment and place of work; (4) the length of time the individual has worked; (5) the method of compensation; (6) the manner of terminating the relationship; (7) whether annual leave is afforded; (8) whether the work is integral to the alleged employer's business; (9) whether the employee accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties. *Id.*

■ The parties incorrectly focus on the relationship between Coopersmith and defendant under the hybrid test.[3] Instead, under the hybrid test, the court is concerned with whether plaintiff is an employee of defendant. Defendant submitted evidence that it had no involvement in the day-to-day operations of Coopersmith's business and, therefore, in plaintiff's day-to-day work. Plaintiff testified that two females she identified as defendant's employees gave her a personality profile and told her about the employment policies. That evidence, however, fails to establish that defendant controlled those aspects of plaintiff's employment. Moreover, Coopersmith stated in his affidavit that he was solely responsible for establishing plaintiff's duties and work hours. Plaintiff has failed to establish personal knowledge or other basis for admission of her testimony that defendant established the applicable employment policies. Defendant was not involved in plaintiff's compensation. Coopersmith paid plaintiff out of his personal account and withheld all applicable taxes. Although plaintiff worked in an office building apparently owned by defendant, Coopersmith actually rented the work place and equipment, as required by his agency contract. Plaintiff acknowledged in her deposition that Coopersmith alone was responsible for the allegedly offensive conduct, and that she had no contact with defendant regarding such conduct or her termination. Although plaintiff believed that Gary Hames, the General Agent, was the boss in the office and that he could discharge her, she admitted in her deposition that she had no personal knowledge regarding his authority over the employees in the office. Plaintiff has failed to establish that defendant was her employer under the hybrid test. There is no evidence that defendant had control over the means

---

**2.** The statutory definitions of employer under Title VII and the KAAD are virtually identical. *See* 42 U.S.C. § 2000e(b) ("employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees, ... and any agent of such person."); K.S.A. 44–1002(b) ("employer" is "any person in this state employing four or more persons and any person acting directly or indirectly for an employer ..."). Accordingly, the court's

analysis under Title VII also applies to the claim under the KAAD.

**3.** As discussed *infra*, to rely on Coopersmith's relationship to defendant to establish plaintiff's employment relationship with defendant, plaintiff must establish that Coopersmith was acting as an agent of defendant with respect to employment matters. *See Deal v. State Farm County Mutual Ins. Co. of Texas*, 5 F.3d 117, 119 (5th Cir.1993).

and manner of plaintiff's work, and none of the other factors indicate an employer-employee relationship between defendant and plaintiff.

 Plaintiff argues that, under the dual employer theory, both defendant and Coopersmith are her employers. *See Zinn v. McKune,* 143 F.3d 1353, 1360 (10th Cir. 1998) (Briscoe, J., concurring). "Generally, a person may be the employee of two employers, 'at one time as to one act, if the service to one does not involve abandonment of the service to the other.'" *Id.* (Briscoe, J., concurring) (quoting Restatement (Second) of Agency § 226 (1958)). Under Title VII, "two separate entities may be a worker's employer if they share or codetermine matters governing the essential terms and conditions of the worker's employment." *Id.* (Briscoe, J., concurring). Plaintiff, however, has failed to establish through competent evidence that defendant controlled any terms or conditions of her employment. Her speculation regarding defendant's control is insufficient to create a genuine issue of material fact. Therefore, plaintiff has failed to show under the dual employer theory that defendant is plaintiff's employer.

 Under the single employer test, the court must consider whether Coopersmith, who is undisputedly plaintiff's employer, and defendant are a single employer in light of the following factors: interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control. *Lockard,* 162 F.3d at 1069. The key factor is "whether the putative employer has centralized control of labor relations." *Id.,* at 1070. "To satisfy the control prong, [defendant] must control the day-to-day employment decisions of [the affiliate.]" *Id.* Here, the evidence indicates that defendant had no control over the day-to-day operations of Coopersmith. Defendant did not control the work hours, work schedules, or daily activities of Coopersmith's employees. Although plaintiff testified that she believed defendant controlled Coopersmith's

business, including employment decisions, she failed to establish that she had personal knowledge or any other adequate foundation for the testimony. Plaintiff has failed to establish the key factor—defendant's control of labor relations. Plaintiff has also failed to offer evidence of the other three factors in the single employer test. Defendant did not control the solicitation business, except to the extent that it limited the geographic area. Neither did defendant control the day-to-day operations of Coopersmith's business. Further, there is no evidence of common management or ownership. As indicated in Coopersmith's contract and by the evidence submitted with the summary judgment papers, Coopersmith was in an independent contractor relationship with defendant. Plaintiff has failed to establish that defendant and Coopersmith were a single employer.

 Plaintiff could also establish that defendant is her employer if Coopersmith, who indisputably hired plaintiff, was acting as an agent of defendant with respect to plaintiff's employment. *See* 42 U.S.C. § 2000e(b) ("employer" includes "any agent of [an employer]"); K.S.A. 44-1002(b) ("employer" includes "any person acting directly or indirectly for an employer"). This issue is also determinative of plaintiff's claim for breach of implied contract of employment because Coopersmith's hiring of plaintiff is the only alleged contractual link between defendant and plaintiff. Although Coopersmith is defendant's agent with respect to sales of life insurance policies, there is no evidence that he is an agent of defendant with respect to plaintiff's employment. *See Deal,* 5 F.3d at 119 (agent under Title VII must be an agent with respect to employment practices). Plaintiff has failed to establish that Coopersmith had authority to contract with plaintiff on behalf of defendant. Accordingly, plaintiff's claims are dismissed.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's mo-

tion (Doc. 11) for summary judgment is granted.

Copies of this order shall be mailed to counsel of record for the parties.

The case is closed.

**IT IS SO ORDERED.**