KELLY, Circuit Judge.
Plaintiff-appellant Jerilyn Zinn appeals from the district court’s grant of summary judgment in favor of defendant-appellees David McKune, Fritz Young and the Kansas Department of Corrections (Department).[1] See Zinn v. McKune, 949 F.Supp. 1530 (D.Kan.1996). Relying on Lambertsen v. Utah Dept. of Corrections, 79 F.3d 1024 (10th Cir.1996), the district court determined-that Ms. Zinn was not an employee of the Department and dismissed her retaliation claims brought under Title VII of the 1964 Civil Rights Act and Kansas’s common-law “whistle-blower” retaliatory discharge doctrine. See Zinn, 949 F.Supp. at 1534-38. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Background

Prison Health Services (PHS) provided medical services to the Osawatomie Correctional Facility, a Kansas state prison administered by the Department of Corrections, pursuant to a written contract. In 1992, Jerilyn Zinn was hired by PHS as a correctional nurse assigned to the prison clinic at Osawatomie. From 1992 to 1995, Ms. Zinn served as the clinic’s Charge Nurse, and as her job title implies, Ms. Zinn was responsible for the day-to-day operation of the clinic.
The contract between PHS and the Department expressly provided that both PHS and its employeés were independent contractors, and explicitly negated the existence of any agency, employment or servant relationship between PHS and the Department of Corrections. See I Joint App. at 75. Accordingly, PHS exercised control over the hiring, firing, wages and benefits of PHS personnel like Ms. Zinn. The agreement also required that PHS personnel assigned to one of the Department’s’prison facilities had to “comply with all applicable rules and regulations, Internal Management Policies and Procedures, and general orders of the Department ... respecting operations and activities in and about property occupied by the Department,” I Joint App. at 80, including the Department of Corrections’ Employee Rules of Conduct/Conditions of Employment. See id.', I Joint App. at 99-108. According to the Policy Statement which precedes them, the Rules of Conduct were promulgated to “pro-viene] a productive and efficient work environment free of behaviors that are eithér violent, threatening, disruptive, harassing, [or] dishonest____ ” I Joint App. at 99. To that end, the Rules establish operational standards relating .to penological,,security concerns, including limitations on contact with inmates and their families, dress and conduct requirements, and regulation of the use of , state property. See id. at 99-108. Moreover, in recognition of “the sensitive nature of penal institutions,” I Joint App. at 62, the contract grants the Department discretion to request removal of PHS personnel assigned to work in a Department prison facility under the contract. Id. If the Department’s concerns about a PHS employee are not resolved, PHS agrees to remove the employee from the facility. Id.
Phyllis Warder, who was Ms. Zinn’s immediate supervisor and a Department employee, evaluated Ms. Zinn’s management of the clinic as it related to the delivery of health care services in the clinic. Ms. Warder, however, was not assigned to the Osawatomie facility and had little day-to-day contact with Ms. Zinn. Fritz Young, a Department employee, also .supervised Ms. Zinn’s activities within the Osawatomie facility and her management of the clinic to the extent they implicated safety and security concerns within the pris *1356 on. See II Joint App. at 365-68, 395-96. Department employees also conducted audits of Ms. Zinn’s preparation of inmate medical records to ensure they were prepared according to the Department’s specifications, as required by the contract between PHS and the Department. See I Joint App. at 79-80; II Joint App. at 333-34, 363-64.
Ms. Zinn filed an initial charge of discrimination with the Department in December 1994, alleging, among other things, that a male corrections officer verbally abused her. The Department investigated those allegations and found them to be without merit. In January 1995, several incident reports were filed against Ms. Zinn detailing allegedly improper contact with inmates. On January 19,1995, Ms. Zinn provided Captain Dan Castello with information relating to the use of state supplies by inmates to produce gifts for former and current state employees. See II Joint App. at 495. Captain Castello’s investigation of the incident implicated Fritz Young, who was thereafter disciplined for misuse of state property and for failing to address Ms. Zinn’s complaints in an aggressive manner. See II Joint App. at 497-98. In early February, Deputy Warden Rudy Stupar requested that Mark Boyd, Health Services Administrator of PHS, reassign Ms. Zinn, citing four specific examples of “inappropriate behavior.” II Joint App. at 445. Ms. Zinn was denied access to the Osawato-mie facility on February 21, 1995. See II Joint App. at 446. PHS subsequently offered Ms. Zinn reassignment to other prison clinics in Wyandotte or Lansing, but Ms. Zinn accepted neither offer because she was physically unable to perform the duties of either position. PHS placed Ms. Zinn on disability leave without pay in March 1995.
Ms. Zinn filed a charge of discrimination with the Kansas Human Rights Commission against the Department as well as PHS alleging violations of the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. See I Joint App. at 21. After receiving her right to sue letter, Ms. Zinn filed suit against all named parties to this appeal as well as PHS, with whom she settled. See I Joint App. at 1-2. The remaining defendants sought summary judgment against Ms. Zinn, arguing, among other things, that the Department was not Ms. Zinn’s employer. See I Joint App. at 267-309. The district court granted defendants’ motion, holding that Ms. Zinn presented “no evidence from which a trier of fact could conclude that [Ms. Zinn] was an employee of the KDC for Title VII purposes.” II Joint App. at 591. Similarly, the district court dismissed Ms. Zinn’s state law whistle-blower retaliation claim, noting that Ms. Zinn had not established that the Department had the power to terminate her and had not established a causal link between her whistle-blowing and her termination. See II Joint App. at 598-99.. Ms. Zinn appealed.

Discussion

We review the district court’s grant of summary judgment de novo and apply the same légal standard as the district court. See Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir.1995). Summary judgment is appropriate if there is “no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c). We examine the factual record and the reasonable inferences which may be drawn from it in the light most favorable to Ms. Zinn. See Universal Money Centers v. AT & T Co., 22 F.3d 1527, 1529 (10th Cir.), cert. denied, 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994).
Under Title VII, Ms. Zinn’s. employment status with the Department is “both a jurisdictional question and an aspect of [her] substantive claim” of retaliation. Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir.), cert. denied, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). In other words, Ms. Zinn must establish, for jurisdictional purposes, that the Department falls within the statutory definition of “employer” provided in 42 U.S.C. § 2000e(b)[2] and that she is personally entitled to relief under the statute because she has an employment relationship *1357 with the Department as required by 42 U.S.C. § 2000e(f).[3] See Deal v. State Farm Co. Mut. Ins. Co., 5 F.3d 117, 118 n. 2 (5th Cir.1993). The parties apparently do not dispute that the Department falls within the statute; thus, the sole issue presented is whether Ms. Zinn is an employee of the Department.
We agree with the parties that Lambertsen v. Utah Dept. of Corrections, 79 F.3d 1024 (10th Cir.1996), provides the analysis for determining whether Ms. Zinn is an employee of the Department for purposes of Title VII. In Lambertsen, we held that the skeletal definitions of “employer” and “employee” provided in 42 U.S.C. § 2000e(b) and (f) should be fleshed out by applying common-law agency principles to the facts and circumstances surrounding the working relationship of the parties. See id. at 1028. Though the main focus of Lambertsen’s hybrid inquiry is whether and to what extent a putative employer has the “right to control the ‘means and manner’ of the worker’s performance,” id., other factors inform the analysis, including
(1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties.
Id. The Lambertsen calculus requires us to look to the totality of circumstances surrounding the working relationship between the parties; no single factor is determinative. See id.
Ms. Zinn urges that the district court incorrectly applied the Lambertsen test to the operative facts of this ease, improperly construing the facts in the light most favorable to the Department and ignoring or misconstruing facts favorable to a finding that Ms. Zinn was an employee of the Department in its Lambertsen analysis. We disagree. The evidence Ms. Zinn presented to the district court, read in the light most favorable to her, could not support a finding by a reasonable jury that the Department controlled the means and manner of her work performance.
Apart from the issue of supervision and evaluation, it is uneontroverted that Ms. Zinn was an employee of PHS and received compensation and benefits from PHS, not the Department. See Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 992-93, 995 (6th Cir.1997); Mares v. Marsh, 111 F.2d 1066, 1068 (5th Cir.1985); II Joint App. at 505-08. PHS provided services to the Department as an independent contractor, and PHS employees, merely by fulfilling terms of the Department-PHS service contract, did not thereby become Department employees. Ms. Zinn suggests otherwise. Reviewing the summary judgment evidence as a whole, however, we believe it is apparent that is not the case. No evidence establishes the requisite degree of control over Ms. Zinn’s professional nursing services necessary to support, a finding that Ms. Zinn was an employee of the Department. Though some elements, in isolation and not in accordance with Lam-bertsen, might appear consistent with an employment relationship, no reasonable jury could find an employment relationship existed based on the totality of the circumstances, and summary judgment is thus proper. See Oestman v. Nat’l Farmers Union Ins. Co., 958 F.2d 303, 306 (10th Cir.1992).
First, in Lambertsen, we implicitly recognized that though valid penological measures imposed to ensure safety and security within a facility may require a worker to fulfill certain conditions, those conditions do not rise to the level of “control” for purposes of determining a worker’s employment status *1358 with the correctional facility itself. See Lambertsen, 79 F.3d at 1026, 1028 (holding that controlling ingress and egress of worker and requiring that worker abide by rules of conduct within facility is insufficient to establish employment relationship • for Title VII purposes). Much of the evidence Ms. Zinn cites in an attempt to establish the Department’s control over the means and manner of her work performance reflects, the Department’s penological interest in ensuring security and safety within the facility. For example, the memoranda upon which Ms. Zinn relies to establish Fritz Young’s supervisory control over her relate to inmate access to the clinic, restocking of the first aid kits, maintaining a “sharps” inventory, and beginning sick call at a time when the facility is adequately staffed. See II Joint App. at 365-68. The Department’s interest in controlling who and what goes into and out of the clinic and at what time clearly relates to the safety and security of the prison, as does its interest in maintaining an accurate “sharps” inventory and adequate medical supplies throughout'the prison. Similarly, Ms. Zinn’s performance of on-site nursing duties using Department facilities and equipment serves the Department’s interest in operating the correctional' facility in a manner which ensures the safety and security of employees and inmates alike. Finally, the Department’s interests in controlling Ms. Zinn’s working hours and access to the facility serve these same purposes. Ms. Zinn’s reliance on these factors is thus misplaced.
Moreover, many of the terms and conditions that Ms. Zinn relies upon were part and" parcel of the agreement governing the relationship between the Department and PHS. The contract provides that PHS and its employees will be considered independent contractors by the Department and expressly denies the creation of an agency, employee or servant relationship with PHS or its employees, but requires all PHS personnel to abide by the Department’s Employee Rules of Conduct. See I Joint App. at 75, 80. The contract also grants the Department the ability to control the format of documentation in medical records prepared by PHS personnel. See id. at 80. The Department’s imposition of these requirements on PHS, its independent contractor, in order to facilitate the clinic’s operation does not make Ms. Zinn, admittedly an employee of PHS, also an employee of the Department. The contract language simply indicates the parties intended the' Department to retain control over its facility and, to that end, to a limited extent over PHS personnel. Thus, Ms. Zinn’s reliance on the contract’s provisions and the Department’s compliance with them proves nothing. See Mares, 777 F.2d at 1069.
We also reject Ms. Zinn’s argument that the Department “reimburses” PHS for her salary, and thus the Department employs her, for similar 'reasons; the Department simply pays for the services provided by PHS personnel as provided in the contract, and it is' PHS’s responsibility to pay wages, salaries, and benefits to PHS personnel. See I Joint App. at 55, 69-70, 86-87; Lambertsen, 79 F.3d at 1026 (noting payment of salary and benefits by School District, not Utah Department' of Corrections). Moreover, Ms. Zinn’s contention that she was terminated by the Department is similarly refuted by the provisions of the contract. Though the Department retains the right to request removal of PHS personnel with whom it is dissatisfied, and did so in this case, PHS alone exercises control over the hiring and firing of PHS personnel, I Joint App. at 86, and actually offered Ms. Zinn work assignments in other facilities prior to placing her on disability leave. See Aplt. Br. at 9. Thus, though the contract allowed the Department to request that Ms. Zinn be transferred from the Osawatomie facility, the record is undisputed that PHS alone retained the ability to terminate Ms. Zinn, indicating the Department was not her employer. See Swallows, 128 F.3d at 995; Lambertsen, 79 F.3d at 1026, 1028.
Ms. Zinn also relies on evidence that Phyllis Warder, a Department employee, supervised her. However, though Ms. Warder supervised and evaluated Ms. Zinn’s performance on a yearly basis, Ms. Warder was herself supervised and evaluated by PHS, not the Department. See I Joint App. at 92. Moreover, Ms. Warder was assigned to a different facility than Ms. Zinn, and sometimes had as little contact as one telephone call per week with Ms. Zinn. See II Joint *1359 App. at 327-28. Thus, the evidence merely indicates that Ms. Warder oversaw Ms. Zinn’s performance, not that she directed or controlled it on a daily basis.
Further, Ms. Zinn argues that since 1993 the Department’s Employee Rules of Conduct have defined “employee” to include “any person employed by an entity under contract to provide services to the [Department,]” I Joint App. at 99, 124, and that this definition is evidence of the Department’s intent to create an employment relationship with PHS personnel. We disagree. Tellingly, at the time of her deposition Ms. Zinn did not believe that she had an employment relationship with the Department. See id. at 52.[4] Given that the contract itself clearly requires compliance with all internal policies and general orders of the Department, such as the Employee Rules of Conduct, and further evinces the clear understanding of the parties that an independent contractor relationship shall at all times exist, the definition relied upon by Ms. Zinn simply does not rise to the level of a disputed material fact. The Department’s definition of “employee” does not evince an intent to create an employment relationship where none otherwise exists.
Ms. Zinn also asserts that the sheer volume of reports filed by correctional officers relating to her operation of the clinic combined with the Department’s acceptance and investigation of EEO reports she filed establish that the Department controlled her employment. We disagree. First, Ms. Zinn does not explain how the number of reports filed or the Department’s investigation of her complaints are relevant under the Lambert-sen analysis. Even were we to find these factors probative under Lambertsen, they do not in any way establish that the Department controlled Ms. Zinn’s performance of her nursing duties. See Lambertsen, 79 F.3d at 1028; Wilde v. County of Kandiyohi, 15 F.3d 103, 106 (8th Cir.1994).
Finally, Ms. Zinn argues that the services she provided to the Department were integral to the Department’s business because the Department must provide adequate medical care to prisoners. See Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). While Ms. Zinn’s performance of a traditional government function as an employee of a private contractor is pertinent to other inquiries, see Richardson v. McKnight, — U.S.-, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997) (addressing § 1983 liability and qualified immunity), we do not believe, considering the totality of the circumstances, that Ms. Zinn has proffered sufficient evidence to support a finding that she was an employee of the Department. The evidence presented by Ms. Zinn indicates that her relationship with the Department was defined by the terms of the PHS-Department contract and by the Department’s valid interests in Security and safety. In all other respects, PHS controlled the manner and means of her work performance. This is not a case where an individual independent contractor claims to be an employee of an entity. See Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1266-67 (11th Cir.1997). Rather, it is a case where an employee of one entity necessarily contends, despite her admission to the contrary, that she is also the employee of another. See supra note 4. The summary judgment evidence simply does not support this difficult position. Because Ms. Zinn has not presented evidence which would allow a reasonable jury to find for her on this issue, the district court properly granted summary judgment on Ms. Zinn’s Title VII claims. See Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir.1996).
In the alternative, Ms. Zinn asserts that the Department acted as an agent of PHS and that even absent an agency or employment relationship Title VII provides protection against retaliation. See Aplt. Br. at 25-32. Our review of the record indicates Ms. Zinn did not raise these arguments before the district court in response to the Department’s summary judgment motion and the district court had no opportunity to address them. See II Joint App. at 530-38, 590-95. Similarly, Ms. Zinn did not raise the
*1360 joint employment or loaned servant theories below, and has not raised them before this court. See id.; cf. Concurring Opinion at 3-4. Absent “the most manifest error,” which is not present here, we are not inclined to decide this case on theories not addressed by the parties nor considered by the district court. See Smith v. Norwest Fin. Acceptance, Inc., 129 F.3d 1408, 1415-16 (10th Cir.1997); Tele-Communications, Inc. v. Commissioner, 104 F.3d 1229, 1232 (10th Cir.1997).
Ms. Zinn also suggests that the district court erred in dismissing her whistle-blower retaliation claim brought under Kansas state law. The district court held Ms. Zinn had not presented evidence of a clear and convincing nature establishing she was a Department employee, and thus failed to show that the Department had the power to terminate her employment. See Zinn, 949 F.Supp. at 1537-38. The district court alsp held Ms. Zinn failed to show the existence of a causal connection between her whistle-blowing and any retaliation against her. See id. at 1538; Palmer v. Brown, 242 Kan. 893, 752 P.2d 685, 690 (1988); Ortega v. IBP, Inc., 255 Kan. 513, 874 P.2d 1188, 1192 (1994). Although we are aware that the Kansas Supreme Court recently extended the doctrine of retaliatory discharge to include retaliatory demotion, see Brigham v. Dillon Companies, Inc., 262 Kan. 12, 935 P.2d 1054, 1059-60 (1997), Ms. Zinn did not argue below and there is nothing in the record suggesting that the Department’s actions resulted in a demotion, and we need not examine that theory here. See Tele-Communications, Inc., 104 F.3d at 1232. Thus, after careful review of the record and authority controlling this matter, we affirm for substantially the same reasons given by the district court. See Zinn, 949 F.Supp. at 1536-38.
AFFIRMED.

. References to the Department should be read to include the two named individual defendants, Fritz Young and David McKune.

. Title VII defines "employer" as "a person ... who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person....” 42 U.S.C. § 2000e(b).

. Title VII defines "employee” as "an individual employed by an employer....” 42 U.S.C. § 2000e(f).

. Ms. Zinn testified in deposition:
Q: So that there is no misunderstanding, you understand that your employer was Prison Health Services, correct?
A: That was my employer.
Q: Kansas Department of Corrections was not your employer?
A: That's right.