**Cara FREEMAN, Plaintiff,**

v.

**State of KANSAS, Defendant.**

**No. 97–2530–DES.**

United States District Court,
D. Kansas.

Jan. 29, 2001.

Michael M. Jackson, Topeka, KS, for plaintiff.

Jeffrey A. Chanay, Entz & Chanay, Topeka, KS, Joseph Brian Cox, Kansas Dept. of Revenue, Topeka, KS, Michael D.

Burrichter, Kansas Dept. of Revenue, Legal Services, Topeka, KS, for defendant.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant State of Kansas's motion for summary judgment as to the temporary employee issue (Doc. 115) and motion for summary judgment as to the remaining issues (Doc. 116). For the reasons set forth below, the State of Kansas's motion for summary judgment as to the temporary employee issue is denied, and its motion for summary judgment as to the remaining issues is granted.

### I. STATEMENT OF FACTS

Plaintiff filed suit against defendants State of Kansas ("the State") and Key Staffing under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Both defendants filed motions to dismiss. The court dismissed plaintiff's claims of discrimination based on national origin, age, and disability but allowed plaintiff's claim of race discrimination to proceed. Both defendants later filed motions for summary judgment as to plaintiff's race discrimination claim. The court granted Key Staffing's motion for summary judgment. The State's motion for summary judgment is currently before the court. Plaintiff claims she was subjected to adverse treatment and discharged by the State because of her race. The following facts concerning plaintiff's race discrimination claim are either uncontroverted or, if controverted, are construed in a light most favorable to the plaintiff.

Plaintiff, who is black, was employed by Key Staffing, a temporary employment agency that places temporary employees with contracting employers. From January 13, 1997, through March 13, 1997, plaintiff was assigned to work at the Kansas Department of Revenue. Her primary job duties included document checking, specifically to check notices of security interests ("NSI"), filing, and typing envelopes. The State assigned Ger-

mean Chisholm–Bean, a black female, to train plaintiff as to her work duties. Plaintiff claims she was given unequal training as compared to other white employees.

Plaintiff proceeded to perform her work duties over the next two months. Plaintiff alleges that she was harassed by her supervisor, Harold Baldwin ("Baldwin"), and her co-workers during this time. The specific incidents will be discussed below. Although plaintiff was reprimanded regarding the quality of her work, plaintiff was never written up. Two days before she was discharged, plaintiff got into an argument with Karol Skelton ("Skelton"). Skelton was also a Key Staffing employee assigned to work at the State, with almost four months seniority over plaintiff. Skelton's job duties included those of plaintiff, but also included data entry into the computer.

Marge Bailey ("Bailey"), bureau chief of Titles and Registrations, investigated the argument by questioning plaintiff's co-workers, who informed her plaintiff was loud and screamed at Skelton, who did not yell back. In the past, Bailey had received reports that plaintiff was sleeping at work, having problems performing her duties, and was rude to a supervisor. Based on this information, Bailey decided to request that plaintiff be removed. On March 13, 1997, Bailey informed Key Staffing that the State no longer wanted plaintiff's services, and plaintiff was escorted off the State's property by a security officer.

On May 6, 1997, plaintiff filed a complaint with the Kansas Human Rights Commission (KHRC) alleging race discrimination. On October 17, 1997, plaintiff filed the present action.

### II. STANDARD OF REVIEW

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of some alleged factu-

al dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed. R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir.1998). The court's function is not to weigh the evidence or determine whether the claims

have merit, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. DISCUSSION

The State of Kansas has two motions for summary judgment pending before the court. The first motion requests that the court grant summary judgment on the temporary employee issue. The State claims it was not plaintiff's employer, and therefore, not liable under Title VII. The second motion requests summary judgment on the remaining issues of plaintiff's race discrimination claims. The State claims the plaintiff has not established a prima facie case of discriminatory discharge, unequal training, or harassment, and even if she did, plaintiff has not shown the State's explanation for her treatment was pretext. Each motion for summary judgment is addressed below.

### A. State of Kansas's Motion for Summary Judgment on the Temporary Employee Issue

■ Title VII makes it an unlawful employment practice for "an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect.to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a). Plaintiff's employment status is "both a jurisdictional question and an aspect of [her] substantive claim" of discrimination. *Zinn v. McKune*, 143 F.3d 1353, 1356 (10th Cir.1998) (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir.1987)). To bring a claim of discrimination, plaintiff must show that "she is personally entitled to relief under the statute because she has an employment relationship with the [defendant] as required by 42 U.S.C.

§ 2000e(f)." *Id.* at 1356–57. The State argues that it is not the employer of the plaintiff, as the State was the client of the temporary employment agency that employed plaintiff, and therefore, it can not be liable to plaintiff under Title VII.

The standard used to determine whether plaintiff is an employee of the State for purposes of Title VII is set forth in *Lambertsen v. Utah Dept. of Corrections*, 79 F.3d 1024 (10th Cir.1996). In *Lambertsen*, the court applied the hybrid test to determine whether an employer-employee relationship exists under Title VII. *Lambertsen*, 79 F.3d at 1028. "Under the hybrid test, the main focus of the court's inquiry is the employer's right to control the 'means and manner' of the worker's performance." *Id.* (citing *Oestman v. National Farmers Union Ins. Co.*, 958 F.2d 303, 305 (10th Cir.1992)). The hybrid test also requires the court to consider the following factors:

> (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties.

*Id.* The court must look to the totality of the circumstances: no one factor is determinative. *Id.*

Several factors weigh against finding that the State was plaintiff's employer. It is undisputed that plaintiff was an employee of Key Staffing. Plaintiff understood that her employer was Key Staffing and that her position with Key Staffing was temporary. The State understood that plaintiff was Key Staffing's employee. Plaintiff was provided with a copy of the contract between Key Staffing and the State, which governs the terms of plaintiff's work assignment with the State. The contract provides that plaintiff was an "independent contractor" and not an employee of the State.

Key Staffing hired plaintiff, could fire plaintiff, and provided plaintiff with the work assignments at clients, such as the State. The State did not directly hire plaintiff for the work assignment and could not fire plaintiff from Key Staffing. If the State was not satisfied with a specific temporary employee, it would contact Key Staffing and request that person was removed. Key Staffing paid the plaintiff for services rendered to the State and provided employment benefits. The State did not pay the plaintiff directly, or provide employment benefits, such as sick leave, vacation time, or retirement benefits. In addition, plaintiff only worked at the State for a short period of time, approximately two months.

Although the above factors weigh against a finding that the State was plaintiff's employer, several factors support a finding that the State was plaintiff's employer. The critical issue of the right to control the means and manner of the worker's performance weighs in favor of the plaintiff. The plaintiff's clerical and office assistant duties were entirely supervised by the State. The State trained plaintiff as to her duties. The State dictated plaintiff's work load, what time she arrived, left, and took breaks. The State also handled any problems that arose out of plaintiff's work performance. The State furnished the place of work and the equipment used to perform basic clerical tasks, i.e., pens, paper, and microfiche machines. Although the State could not fire plaintiff from Key Staffing, the State could request that plaintiff be removed from her work assignment at the State, which interrupted and effected plaintiff's employment with

Key Staffing. In addition, plaintiff's clerical duties required a low degree of skill, unlike the specialized skills that are often associated with independent contractors. *See Zinn,* 143 F.3d at 1358–59 (holding no employer-employee relationship existed where plaintiff provided professional nursing services and defendant did not exercise control over her daily activities).

Under the totality of the circumstances, the court finds the State was plaintiff's employer for purposes of Title VII. Although plaintiff was a temporary employee of Key Staffing assigned to work at the State, the State exerted sufficient control by supervising plaintiff's daily activities and providing the place of work and the tools to work to conclude that the State was plaintiff's employer. This conclusion is supported by the Equal Employment Opportunity Commission Compliance Manual, which provides: "A client of a temporary employment agency typically qualifies as an employer of the temporary worker during the job assignment, along with the agency. This is because the client usually exercises significant supervisory control over the worker." *Enforcement Guidance on Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms,* EEOC Comp. Man. Vol II, Sec. 605 (January 29, 1998). The Manual suggests that the client of the temporary employment agency is the worker's employer in the following scenario:

A temporary employment agency hires a worker and assigns him to serve as a computer programmer for one of the agency's clients. The agency pays the worker a salary based on the number of hours worked as reported by the client. The agency also withholds social security and taxes and provides workers' compensation coverage. The client establishes the hours of work and oversees the individual's work. The individual uses the client's equipment and supplies and works on the client's premises. The agency reviews the individual's work based on reports by the client. The agency can terminate the worker if his or her services are unacceptable to the client. Moreover, the worker can terminate the relationship without incurring a penalty.

*Id. See also Reynolds v. CSX Transp., Inc.,* 115 F.3d 860, 869 n. 12 (11th Cir. 1997) (finding the temporary employment agency's client qualified as employer of the worker assigned to it for purposes of a Title VII retaliation claim), *vacated on other grounds,* 524 U.S. 947, 118 S.Ct. 2364, 141 L.Ed.2d 732 (1998); *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 611 F.Supp. 344, 348–49 (S.D.N.Y. 1984) (finding temporary employment agency's client was liable under Title VII because the client exercised sufficient control over the means and manner of the worker's performance). This scenario is analogous to plaintiff's situation. The court finds the State was plaintiff's employer for purposes of Title VII.

**B. State of Kansas's Motion for Summary Judgment on the Remaining Issues**

Plaintiff presents three types of race discrimination claims. First, plaintiff argues the State discriminated against her when it terminated her employment with the State. Second, plaintiff argues she was subjected to unequal and inadequate training. Finally, plaintiff argues the she was subjected to harassment by her supervisor, Harold Baldwin, and her co-workers. Defendant argues plaintiff cannot support any of her claims of discrimination.

Under Title VII, a plaintiff must prove that he or she was the victim of intentional discrimination. *Equal Employment Opportunity Comm'n v. Wiltel, Inc.,* 81 F.3d 1508, 1513 (10th Cir.1996) (citing *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). Plaintiff may carry this burden in one of two ways: "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation

is unworthy of credence." *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir.1999) (internal quotation marks and citation omitted).

Plaintiff has not presented any direct evidence of discrimination, i.e., " 'evidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.' " *Id.* (quoting Black's Law Dictionary 460 (6th ed.1990)) (alterations in original). Therefore, the court must analyze her indirect evidence of discrimination under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, a plaintiff has the initial burden of satisfying the prima facie requirements of a Title VII discrimination case. *See Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1533 (10th Cir.1995). If the plaintiff can meet this burden, then the defendant must offer a "facially nondiscriminatory reason for the challenged employment action." *Shorter*, 188 F.3d at 1208 (citation omitted). Finally, if the defendant can offer a nondiscriminatory reason, then the burden shifts back to the plaintiff to show that defendant's proffered reason is merely pretextual. *Id.*

### 1. Discriminatory Discharge

■ To establish a prima facie case of discriminatory discharge, the plaintiff must show: (1) she is a member of a racial minority; (2) she was discharged for violating a work rule; and (3) similarly situated non-minority employees who violated the same rule were treated differently than she was.[1] *Elmore v. Capstan, Inc.*, 58 F.3d 525, 529–30 (10th Cir.1995) (citing *Equal Employment Opportunity Comm'n v. Flasher, Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir.1992)). It is not disputed that

plaintiff is black and she was discharged for violating a work rule. It is disputed that similarly situated non-minority employees were treated differently.

The State claims it discharged plaintiff due to a combination of factors: the argument with co-worker, Karol Skelton, sleeping at work, being rude to a supervisor, and problems with work performance. Plaintiff claims white employee Karol Skelton is similarly situated with plaintiff, as she was also a Key Staffing temporary employee who equally participated in the argument with plaintiff. However, the plaintiff fails to acknowledge important differences between the two women. First, while both women were Key Staffing temporary employees, Skelton had four months seniority over plaintiff. Skelton had been assigned to the State for six months, as compared to plaintiff's two months, at the time the argument occurred. Second, the plaintiff did not present any evidence as to what Skelton's job duties included and testified she did not know Skelton's job duties. The State presented evidence that while Skelton's job duties were originally the duties assigned to plaintiff, Skelton's duties had advanced to include data entry into the computer.

There were no reports that Skelton had slept on the job. Although plaintiff testified that she saw Skelton with her hand on her head with her eyes closed, there is no evidence that plaintiff ever reported this information or that a supervisor observed the incident. There were no reports that Skelton had been rude to a supervisor. There were also no reports that Skelton was not performing her job duties correctly. Although plaintiff testified that in her opinion Skelton's work performance was

---

**1.** Since the filing of the briefs, the Tenth Circuit has clarified its position that to establish a prima facie case of discriminatory discharge a plaintiff must show: "(1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge." *Kendrick v. Penske Trans. Servs., Inc.*, 220 F.3d 1220, 1229 (10th

Cir.2000) (citing *Perry v. Woodward*, 199 F.3d 1126, 1138 (10th Cir.1999)). The court has reviewed the record and found no evidence that plaintiff's position was not eliminated. Therefore, the court will analyze the elements of the prima facie case, including the element of "similarly situated," as agreed to by the parties.

unsatisfactory and Skelton made mistakes, there is no evidence that plaintiff ever reported this information or that a supervisor shared plaintiff's opinion or observed Skelton's mistakes.

Under these facts, the court finds plaintiff and Skelton are not similarly situated. Therefore, plaintiff has failed to establish a prima facie case and summary judgment is appropriate. However, even if plaintiff had demonstrated a prima facie case, her evidence is insufficient on the issue of pretext.

■ Pretext may be established by showing either "that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir.1994) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). As discussed above, the State, specifically Marge Bailey, claims the plaintiff was discharged because she got into an argument with a co-worker, she slept at work, she was rude to a supervisor, and her work performance was unsatisfactory. Plaintiff appears to argue that the stated reasons for discharge were pretextual because her co-worker was equally involved in the argument, she never slept at work, and she was inadequately trained for her job.

First, Marge Bailey investigated the argument between plaintiff and Skelton and determined plaintiff was at fault. Bailey interviewed plaintiff's co-workers, who informed her that plaintiff was the aggressor who yelled and screamed at Skelton. If the State believed the co-workers' account of the incident, such belief is not pretextual, even if the State's belief later turned out to be erroneous. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir.1998) ("The test is good faith belief."). The fact that Skelton was not also discharged due to the argument is irrelevant to show pretext, as the court found plaintiff and Skelton were not similarly situated.

Second, Bailey received reports that plaintiff had been sleeping. Plaintiff admitted to several incidents which could reasonably have resulted in someone reporting she was sleeping. Plaintiff admitted to falling asleep for five minutes on January 26, 1997. She also admitted to not working while placing her hand on her head, which could easily be perceived as sleeping. Plaintiff testified that her diabetic condition made her feel extremely tired. Several co-workers told her she was sleeping. In addition, plaintiff's mother witnessed the plaintiff nodding off in the afternoon. These incidents support the fact that reports that plaintiff was sleeping were made to Bailey, and good faith reliance on such reports was not pretextual. *See McKnight*, 149 F.3d at 1129.

Finally, Bailey received reports that plaintiff was not performing her job correctly. Supervisor Harold Baldwin complained about plaintiff's work performance. A supervisor in another section, Carla Baum, reported that plaintiff had misfiled the microfiche records. Co-worker and lead person in plaintiff's work area, Debria Sacripanti, reported that plaintiff was having difficulty typing envelopes, as well as having problems with filing and other duties. There is no evidence in the record to suggest that Marge Bailey did not believe any of the reports, and reliance on these reports was not pretextual. *Id.* Plaintiff's claim that she was inadequately trained does not make the State's proffered reason pretextual. Plaintiff's complaint of unequal training refers to training on the NSI's, which is only a part of the reported complaints. In addition, the court rejects the plaintiff's argument that similarly situated white employees were trained differently for the reasons discussed below.

Plaintiff has not demonstrated a prima facie case for discriminatory discharge, nor has she shown the State's stated reason for her discharge was pretextual. Summary judgment is granted as to plaintiff's discriminatory discharge claim.

## 2. Unequal Training

■ Plaintiff claims she was subjected to disparate treatment because the State subjected her to inadequate and unequal training. To establish a prima facie case of disparate treatment, the plaintiff must show she was "treated less favorably than others not in the protected class." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1315–16 (10th Cir.1999) (citing *Sanchez v. Denver Pub. Schools*, 164 F.3d 527, 531 (10th Cir.1998)).

Plaintiff claims white employees were trained by white supervisor Harold Baldwin or white employee Debria Sacripanti, while black employees were trained by black employee Germean Bean ("Bean"), who lacked the necessary experience to properly train others. There are several reasons to reject plaintiff's allegation. First, plaintiff testified that she was trained by both Bean and white employee Karol Skelton.[2] Second, there is evidence that Bean trained both white (Patrick Armour) and black (Evelyn Brown) employees. Third, plaintiff testified that she does not know who trained other new employees in her position, including Karol Skelton. Plaintiff has failed to establish a prima facie case, as she has failed to present any evidence to suggest plaintiff was treated differently than new white employees. Likewise, plaintiff has not demonstrated that State's proffered reason for who was assigned to train her was pretextual. Baldwin testified that plaintiff was trained in the same manner as anyone else in plaintiff's position. Plaintiff has not presented any evidence to contradict this assertion. Therefore, summary judgment is granted as to plaintiff's unequal training claim.

## 3. Harassment

Title VII prohibits racial harassment in the workplace. *Hicks v.. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir.1987). The plaintiff claims that the racial harassment she experienced created a hostile work environment. Plaintiff claims her supervisor and co-workers intentionally discriminated against her due to her race. The State argues that the conduct complained of is not sufficiently pervasive or severe to create an objectively or subjectively hostile work environment.

In order to survive summary judgment, the plaintiff must provide evidence which shows that, "under the totality of the circumstances, (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus." *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998) (*citing Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir.1994)). To determine whether the harassment was sufficiently severe or pervasive, the court must consider all the circumstances, including such things as the "frequency of the discriminating conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). In order to be actionable, a racially objectionable environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* at 787.

### a. Harassment By Supervisor

■ The facts provided by the plaintiff in support of her hostile work environment claim include the following actions by supervisor Harold Baldwin:

(1) Baldwin scolded plaintiff for arguing with white employees but did not scold white employees;

(2) Baldwin scolded plaintiff for not doing work assigned to her but did not scold white employees;

---

2. The court finds it noteworthy that the training referred to only took approximately one to two hours according to Bean.

(3) Baldwin did not permit plaintiff to use the computer but allowed white employees to use the computer;

(4) Baldwin would walk by plaintiff's work station but not white employees' work stations;

(5) Baldwin would look disapprovingly at plaintiff but not at white employees;

(6) Baldwin yelled at plaintiff but not at white employees;

(7) Baldwin would not allow plaintiff to walk and talk freely but permitted white employees to do such;

(8) Baldwin assigned plaintiff work, then took it away and gave it to other white employees; and

(9) Baldwin would assign plaintiff less desirable jobs than white employees.

Plaintiff did not complain of these incidents to Baldwin's supervisor, Marge Bailey, or anyone else at the State. Likewise, plaintiff never reported the alleged harassment to Key Staffing.

To establish a claim of harassment, plaintiff must come forward with evidence that the alleged harassment was racially motivated. Plaintiff has failed to demonstrate that the actions by her supervisor Harold Baldwin were racially motivated.

As to the scolding and yelling by Baldwin, plaintiff only describes three incidents in which Baldwin "yelled" or "scolded" her. Plaintiff has not pointed to anything about these incidents which would raise them to the level of severe. There is no evidence that the yelling and scolding was motivated by plaintiff's race. Baldwin did not use racial comments or epithets. Plaintiff testified that she does not know if Baldwin scolded or yelled at any other employees. Scolding and yelling at a minority employee by itself is not sufficient to demonstrate the actions were racially motivated. *See Moore v. Norfolk and Western Ry. Co.,* 731 F.Supp. 1015, 1020 (D.Kan.1990) (evidence that the supervisor hollered and cussed at a black employee for making mistakes, called the employee dumb and stupid, and used profane language is not sufficient by itself to show the statements

were made with racial animus). A supervisor may yell and scold an employee without violating Title VII. Neither federal or state law "mandate congenial relationships between supervisors and employees." *Aramburu v. Boeing Co.,* 911 F.Supp. 1377, 1393 (D.Kan.1995) (internal citations omitted).

As to plaintiff's argument that Baldwin did not allow her to use the computers because she was black, this argument has no evidentiary support. Plaintiff's job description did not include working on the computer. No one told plaintiff she would work on a computer. Plaintiff appears to argue that because white employee Karol Skelton was allowed to use the computer, plaintiff was not allowed to use the computer because she was black. However, as discussed previously, the plaintiff and Skelton are not similarly situated. Skelton had four months seniority, and her job duties had advanced to include use of the computer. There is no evidence that Baldwin's decision to not allow plaintiff to use a computer was racially motivated.

As to Baldwin's checking to see if plaintiff was working and looking disapprovingly at plaintiff, the court finds this allegation has no evidentiary support. Plaintiff testified that she did not know why Baldwin walked by her desk. Plaintiff presented no evidence as to the manner or nature of "disapproving" looks she received from Baldwin. When Baldwin walked by and looked at plaintiff, he never made any comment. There are no facts to support the conclusion that his actions were racially motivated. A supervisor checking on an employee is insufficient to establish a Title VII violation. *See Sharon v. Yellow Freight System, Inc.,* 872 F.Supp. 839, 847 (D.Kan.1994) (finding no adverse action resulted from a supervisor keeping a log on an employee). The court "cannot vilify every supervisor that ... monitors her employees' conduct." *Trujillo v. Univ. of Colo. Health Sciences Ctr.,* 157 F.3d 1211, 1214 (10th Cir.1998). Likewise, there is no Title VII requirement that a supervisor smile or look pleasantly at employees. Plaintiff's suggestion that Baldwin checked

on her because of her race is mere speculation. Baldwin testified that he checked on plaintiff to ensure that she was doing her job correctly because she was a new employee. It is reasonable that Baldwin frequently checked on new employees to ensure work performance. Plaintiff testified that as time went by, Baldwin checked on her less and less: more in January, less in February, and hardly at all in March. Plaintiff has not presented evidence to suggest that Baldwin's stated reason for checking on her was pretext.

Plaintiff's claim that Baldwin restricted her movement is also not supported by evidence. Plaintiff testified that she had to get permission to leave the work area to go to her afternoon work station, however, at that time, no other employees left the work area to go to a new work station. Plaintiff did not present any evidence as to whether Karol Skelton was or was not required to report to Baldwin when she left the work area as a new employee. Likewise, the evidence does not support plaintiff's claim that Baldwin did not allow her to talk with others. Plaintiff testified that she talked to Bean, a Hispanic lady on a daily basis, and a few others. Plaintiff has not demonstrated that Baldwin's restriction of her movement, to the extent it was restricted, was racially motivated.

As to plaintiff's claim that Baldwin assigned her work and took it away to give it to white employees, the plaintiff has not presented evidence that this action was racially motivated. Plaintiff testified that it was not Baldwin, but co-workers Debria Sacripanti and Roberta Shuh, that caused her to change work assignments. Even if Baldwin did change the assignments (or gave final approval of the assignments), plaintiff testified that she did not care which of the jobs she did, therefore, the assignment change was not subjectively adverse to her. *See Faragher,* 524 U.S. at 787, 118 S.Ct. 2275 (a racially objectionable environment must be one that the victim herself perceived to be hostile or abusive). Additionally, plaintiff testified that she did not know why the changes in work assignments were made. Debria Sacripanti testified that the change in plaintiff's duties was due to plaintiff's poor work performance, as well as that sections not having enough work to keep her busy. Plaintiff has offered no evidence to show the State's stated reason for the change in work assignment was pretext.

As to plaintiff's final allegation that Baldwin assigned her the less desirable jobs, the court finds no evidence supports this allegation. The "less desirable job" complained of was filing. Plaintiff appears to argue that she was given the "dirty" files, which included unorganized, ripped, torn, sticky, and stained files, while white employees were given cleaner and easier files. Plaintiff was hired to do filing. Plaintiff testified that filing was easy and she did not mind filing. Plaintiff presents no evidence that the decision of which files she was assigned was racially motivated.

Title VII does not require employers to treat all people equally, rather, it prohibits employers from treating employees unequally based on race. The evidence submitted by plaintiff in support of her claims of harassment by Baldwin consist primarily of her own statements that she was not treated as well as white employees. This is insufficient to establish a claim of harassment.[3] In addition to failing to present evidence that Baldwin's actions were motivated by race, plaintiff has

---

3. To the extent plaintiff's claims of harassment could be construed as claims of differential treatment in employment, the court finds summary judgment is appropriate. To establish a prima facie case of differential treatment under Title VII, the plaintiff must show that she "suffered an adverse employment action." *Sanchez,* 164 F.3d at 531. "[A] mere inconvenience or an alteration of job responsibilities" is not an adverse employ-

ment action. *Id.* "Conduct is adverse employment action if it constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." *Id.* None of plaintiff's claims rise to the level of adverse employment action, therefore, summary judgment is appropriate.

not presented evidence that the "harassment" was pervasive or severe enough to alter the terms, conditions, or privilege of her employment. Plaintiff has not met her burden. The evidence presented is insufficient to establish racial harassment. Therefore, summary judgment is appropriate on these claims.

### b. Actions By Co-workers

 The facts provided by the plaintiff in support of her hostile work environment claim include the following actions by co-workers:

(1) Barb Wagner stated that the black man who shot three white persons at a local bar should get the death penalty;

(2) Vickie Colvin stated that black women were only good for cleaning;

(3) Karol Skelton stated that a black person on the third floor made a mistake;

(4) Co-workers inspected plaintiff's drinks;

(5) Co-workers inspected plaintiff's skin;

(6) Co-workers Kathy, Carol, and Joe yelled at plaintiff about her work on NSI's;

(7) Co-workers refused to use office equipment after plaintiff used or touched it;

(8) Plaintiff was treated poorly at the microfiche machine;

(9) Skelton yelled at and argued with plaintiff about her mistakes;

(10) Co-workers constantly reviewed plaintiff's work but not the work of white employees; and

(11) Co-workers talked loudly while plaintiff was working.

An employer is not liable for discriminatory harassment by an employee's peers unless its management level employees, agents, or supervisory employees knew or should have known of the harassment and failed to take prompt and effective remedial measures. *See Hirschfeld v. New Mexico Corrections Dept.*, 916 F.2d 572, 577 (10th Cir.1990) (citing *Equal Employment Opportunity Comm'n v. Hacienda Hotel*, 881 F.2d 1504, 1516 (9th Cir.1989)). Essentially, an employer is not liable for racial harassment by a co-worker unless the employer was negligent. *Id.* (citing *Hicks*, 833 F.2d at 1418).

 There is no evidence that the State was directly notified of the alleged harassment. Plaintiff did not complain of harassment to her supervisor Harold Baldwin, bureau chief Marge Bailey, or anyone else at the State. Likewise, plaintiff never reported the alleged harassment to Key Staffing. Therefore, summary judgment is appropriate unless the plaintiff comes forward with evidence that the State should have known of harassment.

Baldwin never observed any derogatory racial references, which would make him aware that plaintiff was harassed. *See Trujillo*, 157 F.3d at 1214 ("racial comments or ridicule ... are hallmarks of hostile work environment claims"). There are only three statements plaintiff claims were harassment. Plaintiff submitted no evidence that Baldwin or any other supervisor heard any of the three statements. Plaintiff has not shown that the State knew or should have known of these statements.

Even if a supervisor heard the three statements, these statements are not sufficiently severe or pervasive to create a hostile work environment. Casual or isolated manifestations of a discriminatory environment are not sufficient to demonstrate a hostile working environment. *Hicks*, 833 F.2d at 1414. The statements plaintiff claims created a hostile work environment were isolated and not directed at plaintiff. The first is Karol Skelton's statement that a black employee on another floor made a mistake. Plaintiff testified that she could not say whether the comment was racial in nature. Plaintiff did not know the woman referred to or whether the woman made a mistake. The second is a statement by Barb Wagner that a black man who killed three white men in a shooting at a local bar should receive the death penalty is not derogatory. Many people share the view that a murderer

should be executed. Neither of these statements, if heard by a supervisor would suggest racial harassment. The third statement was by Vickie Colvin, who said black women were only good for cleaning. This statement is clearly derogatory, but it was the only such comment and was not directed at plaintiff. Courts have recognized that "the impact of 'second-hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff." *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1144 (7th Cir.1997). *See Williams v. Kansas Gas and Elec. Co.*, 805 F.Supp. 890 (D.Kan.1992) (holding plaintiff's chance viewing of offensive cartoons, not personally handed to her, was insufficient to create sexually hostile work environment). Plaintiff has failed to present evidence that the three statements interfered with her job performance or would interfere with a reasonable person's job performance. Plaintiff has not established these statements, even if heard by a supervisor, contributed to a hostile work environment.

■ As to plaintiff's claims that co-workers inspected her drinks and her skin, there is no evidence that these actions were motivated by plaintiff's race. No co-worker ever made a comment to plaintiff during any alleged inspection. Plaintiff testified she did not know what her co-workers were looking for when they looked at her beverages. Plaintiff speculated that co-worker Vicki Colvin told others plaintiff was bringing alcohol to work. Plaintiff also speculated that her co-workers were worried about how much liquid she consumed because plaintiff had a "huge thirst." As to her co-workers looking at her skin, plaintiff speculated that her co-workers looked at her skin because they thought she had the AIDS virus. Plaintiff admitted there was no connection between her race and others believing she was infected with the HIV virus. Plaintiff also thought they were looking at her skin because of her "horrible" appearance due to an outbreak of acne, the result of a skin reaction to the soap used in the office restrooms. Plain-

tiff is simply speculating that the actions of her co-workers were motivated by her race. Plaintiff has not presented any evidence that the actions complained of were motivated by her race. Plaintiff has also presented no evidence to support her position that the State knew or should have known that she was being harassed by her co-workers' inspection of her drinks and skin.

■ Plaintiff also claims co-workers harassed her because they refused to use office equipment after plaintiff used or touched it and she was treated poorly at the microfiche machine. As to pens and pencils, plaintiff was instructed by her co-workers to not touch their pens and pencils. These requests may be overly territorial, but plaintiff has not shown they were driven by her race. Plaintiff states that Baldwin saw one incident involving a pencil. Plaintiff described this instance as "petty." An incident that is not subjectively offensive cannot support a hostile work environment claim. *See Faragher*, 524 U.S. at 787, 118 S.Ct. 2275. Plaintiff also claims that co-workers would not use a chair she sat in. However, plaintiff only points to particular incident in which Skelton brought her own chair across the room to use it. Preferring to use one's own chair is not racial harassment.

As to the computer, plaintiff was instructed by Baldwin not to use the computer. As discussed above, plaintiff was not trained on the computer and it was not included in her job duties. There is no evidence that race motivated the decision to keep plaintiff off the computer. As to the file cabinet, co-workers Vickie Colvin and Roberta Shuh told plaintiff to stay away from a particular file cabinet and certain files that they used on a regular basis. There is no evidence that this request was motivated by plaintiff's race or that Baldwin knew about the request. As to the microfiche machine, plaintiff has evidence which demonstrates nothing more than supervisor miscommunication. Baldwin told plaintiff to use one microfiche machine. Supervisor Baum told the plain-

tiff not to use that machine because it was to be used by her employees for the benefit of their customers. The plaintiff has not demonstrated that she was not allowed to use the microfiche machine due to her race. None of the incidents complained of regarding office equipment are severe or pervasive enough to be considered harassment. Nor has plaintiff demonstrated that these incidents unreasonably interfered with her job performance.

As to plaintiff's claim that her co-workers talked loudly to harass her, plaintiff has presented no evidence that this action was racially motivated. Plaintiff testified that only one co-worker, Vickie Colvin, spoke loudly. Plaintiff also stated that Colvin had a loud voice, but that Colvin raised her voice when plaintiff was trying to count NSI's. Assuming that Colvin in fact raised her voice, there is no evidence that plaintiff's race motivated her to do so. Trying to disrupt a co-workers counting is at most horseplay, which is not actionable under Title VII. Plaintiff has no evidence that Baldwin knew or should have known that a co-worker was talking loudly to disrupt plaintiff's work. This claim has no evidentiary support.

Plaintiff's final claim is that her co-workers criticized and yelled at plaintiff due to mistakes that she did not make. Unjust criticism and discourteous conduct are not actionable. *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 561–62 (D.Kan. 1995). Plaintiff points to a few minor incidents of co-worker criticism and yelling. These incidents do not rise to the level of severe and pervasive. "[T]o establish a hostile work environment, plaintiff must show that the alleged harassment is excessive, opprobrious, and more than 'casual conversation.'" *Id.* No jury could find that the incidents recited by plaintiff subjected her to criticism that was significant enough to alter the conditions of her employment.

The evidence before the court is insufficient to allow the plaintiff to meet her burden on any of her claims of co-worker harassment. Plaintiff has cited no cases

finding similar supervisor or co-worker conduct to constitute a racially hostile work environment. Therefore, the court finds summary judgment is proper on plaintiff's claim of hostile work environment.

## IV. CONCLUSION

Although the State is an employer of plaintiff for purposes of Title VII liability, plaintiff has failed to demonstrate a prima facie case of discriminatory discharge, unequal training, or harassment. Likewise, plaintiff failed to demonstrate that the State's explanation of its conduct was pretext. Therefore, summary judgment is appropriate on all plaintiff's claims.

**IT IS THEREFORE BY THE COURT ORDERED** that defendant State of Kansas's motion for summary judgment as to the temporary employee issue (Doc. 115) is denied. Defendant State of Kansas's motion for summary judgment as to the remaining issues (Doc. 116) is granted.